

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00603-CR

Chad William **BALLARD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 12-03-10907-CR
The Honorable Camile G. Dubose, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Jason Pulliam, Justice

Delivered and Filed:  November 4, 2015

AFFIRMED

Chad William Ballard entered an open plea of guilty to the offense of aggravated assault
and elected to have the trial court decide punishment.  On appeal, Ballard contends: (1) the State
failed to provide notice of its intention to seek an affirmative finding on the use of a deadly weapon;
and (2) trial counsel rendered ineffective assistance by failing to advise him that the trial court
could not grant probation if a deadly weapon finding was made and by failing to investigate his
mental health.  We overrule Ballard's issues and affirm the trial court's judgment.

## BACKGROUND

While William Richard was visiting Kimberly Gerloff in her home, Ballard banged on Gerloff's door pleading for help. Gerloff knew Ballard because Ballard and his siblings were the same age as Gerloff's children, and they graduated from school together. After graduation, Ballard continued to live with his grandparents who were Gerloff's neighbors.

Ballard did not have on a shirt or shoes. Because Ballard was screaming, crying, and acting bizarrely, Richard asked him if he had been drinking or had taken any drugs, which Ballard denied. Gerloff's efforts to calm Ballard were unsuccessful. Several minutes after entering the house, Ballard violently attacked Richard. Gerloff called 911, and the first officer on the scene had difficulty subduing Ballard and placing him in custody. Richard was transported by EMS to the hospital.

Ballard was indicted for aggravated assault, and, as previously noted, he entered an open plea. At the conclusion of the sentencing hearing, the trial court sentenced Ballard to fifteen years' imprisonment.

## DEADLY WEAPON FINDING

In his first issue, Ballard contends the State failed to provide him with notice of its intention to seek an affirmative finding on the use of a deadly weapon. Ballard asserts the "first and only time" the State referenced its intention to seek the deadly weapon finding was after he already had entered his plea.

The indictment in this case listed the charge as aggravated assault with a deadly weapon and charged Ballard with "intentionally, knowingly, or recklessly caus[ing] serious bodily injury to [Richard] by cutting him with a piece of glass, which caused serious bodily injury." The Texas Court of Criminal Appeals has held, "an allegation that a defendant committed aggravated assault gives him notice that the deadly nature of the weapon alleged in the indictment [will] be an issue

at trial and that the State may seek an affirmative finding on the use of the weapon." *Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008). In support of this holding, the court reasoned:

> Aggravated assault may be committed in only two ways: (1) by caus[ing] serious bodily injury or (2) by us[ing] or exhibit[ing] a deadly weapon during the commission of the assault. Each of these involves the use of a deadly weapon. The first way necessarily implies the use of a deadly weapon, which is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. The second way specifies the use of a deadly weapon.

*Id*. (internal citations omitted). In this case, the indictment alleged Ballard committed the offense of aggravated assault by causing serious bodily injury. Accordingly, the indictment gave Ballard notice that the State could seek an affirmative finding on the use of a deadly weapon. *See id*.

## MOTION FOR NEW TRIAL/INEFFECTIVE ASSISTANCE OF COUNSEL

In his second and third issues, Ballard argues his trial counsel rendered ineffective assistance of counsel by failing to advise him that the trial court could not grant probation if a deadly weapon finding was made and by failing to investigate his mental health. Ballard raised both of these issues in his motion for new trial which the trial court denied after a hearing.

A.      Standard of Review

To prevail on an ineffective assistance claim, an appellant must show: (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficiency caused the appellant prejudice; that is, there is a probability sufficient to undermine confidence in the outcome that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Ex parte Bryant*, 448 S.W.3d 29, 39–40 (Tex. Crim. App. 2014). When, as here, an appellant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the trial court's ruling, and we reverse only if

no reasonable view of the record could support the trial court's findings. *Riley*, 378 S.W.3d at 457.

  B.  Advice on Trial Court's Ability to Grant Probation

  Ballard contends trial counsel failed to advise him that the trial court could not grant probation if a deadly weapon finding was made. In support of this contention, Ballard relies on his affidavit in which he stated, after reading he could not get probation if the trial judge made an affirmative finding that he used a deadly weapon, he texted his attorney, stating "you didn't tell me the jury is the only one who can give me probation if the deadly weapon finding is evident." In response to this message, trial counsel responded, "A judge can give probation even on a deadly weapon case." Ballard attached printed copies of the text messages to his motion for new trial.

  In his affidavit, trial counsel stated, "I certainly never told Chad he would receive probation on this case or misled him in any way." "We talked about a trial and how that would go." "I also talked about arguing sentencing to a judge or jury to try to get him thinking about his many options." "When his mind was clear of alcohol and drugs, he dealt directly with his case and agreed that the best strategy was to enter a plea and to present evidence to the judge." "At his plea and at his sentencing, Chad understood what he was doing, the importance of the deadly weapon finding and the many possible outcomes for his case."

  In arguing this issue, Ballard correctly observes that a trial court cannot suspend sentence and place a defendant on community supervision following a felony conviction if an affirmative finding that a deadly weapon was used is entered. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2014). At the time Ballard entered his plea, however, he was eligible for probation because the trial court had not yet entered an affirmative finding regarding the deadly weapon. *See Rodriguez v. State*, 933 S.W.2d 702, 706–07 (Tex. App.—San Antonio 1996, pet. ref'd); *Graves v. State*, 803 S.W.2d 342, 343 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd).

Even when a deadly weapon finding is "virtually a given under the facts," "[t]he trial court [is] under no legal obligation to enter a deadly weapon finding . . ., and . . . [c]ommunity supervision [is still] an option within the discretion of the trial judge." *Rodriguez*, 933 S.W.2d at 706. As the Texas Court of Criminal Appeals has recently held, "a trial judge has the discretion to decline to make a deadly-weapon finding even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element." *Guthrie-Nail v. State*, No. PD-0125-14, 2015 WL 5449642, at *4 (Tex. Crim. App. Sept. 16, 2015). Accordingly, until the trial court entered the affirmative finding, the trial court could still suspend Ballard's sentence and place him on community supervision.

In further support of this issue, Ballard relies on the statement in his affidavit that he was not informed of the significance of a deadly weapon finding. At the hearing on Ballard's motion for new trial, however, the trial court stated on the record that he had reviewed the affidavits. The trial court read trial counsel's affidavit as indicating that he met with Ballard and reviewed the significance of a deadly weapon finding with him. The trial court then stated, "So with regard to your client's complaint that he did not know the significance of a deadly weapon finding, the Court does not find that complaint credible at this point in time." Viewing the evidence in the light most favorable to the trial court's ruling, a reasonable view of the record supports the trial court's ruling. *Riley*, 378 S.W.3d at 457. Accordingly, the trial court did not abuse its discretion in denying Ballard's motion for new trial on this issue.

C.      Investigation of Ballard's Mental Health

In his final issue, Ballard contends trial counsel was ineffective in failing to investigate his mental health. In support of this issue, Ballard refers to a motion for examination regarding insanity and competency filed by his first retained attorney in which the attorney requested an

expert be appointed to examine Ballard. Ballard also refers to his trial counsel's decision to have Ballard examined on April 30, 2014, almost two months after he entered his plea.

Counsel is not always required to investigate a defendant's psychiatric history to provide effective assistance of counsel. *See Barnett v. State*, 344 S.W.3d 6, 17 (Tex. App.—Texarkana 2011, pet. ref'd); *Purchase v. State*, 84 S.W.3d 696, 700–01 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In determining the reasonableness of an attorney's investigation, a court must consider "the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006). Although counsel has a duty to make reasonable investigations, counsel may also reasonably decide particular investigations are unnecessary. *See id*. "'[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Id*. (quoting *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003)).

Because Ballard raised this issue in his motion for new trial, this court is reviewing the trial court's ruling regarding the reasonableness of trial counsel's investigation under an abuse of discretion standard. *Riley*, 378 S.W.3d at 457. Accordingly, we view the evidence in the light most favorable to the trial court's ruling, and we reverse only if no reasonable view of the record could support the trial court's findings. *Id*.

In denying the motion for new trial, the trial court considered trial counsel's affidavit which stated:

> When Chad was arrested and held by the court because of a bad check and pretrial violations, he had to spend about a month in jail. That time helped clear his head and allowed me to talk to him very directly. When his mind was clear of alcohol and drugs, he dealt directly with his case and agreed that the best strategy was to enter a plea and to present evidence to the judge. While Chad had been very distracted before, he was always competent. I was concerned about his mental illness but it was clearly not severe. Dr. Skop confirmed my own beliefs in his

evaluation submitted to the court. The evaluation was done in preparation for sentencing because Chad was clearly competent every time I met with him.

In addition, the trial court considered an affidavit submitted by Ballard's wife stating, "Chad's trial lawyer did very little if anything to investigate Chad's case and he certainly did not have Dr. Skop interview any of Chad's family or review Chad's medical records." The trial court also considered Ballard's affidavit which stated:

> I spent approximately 45 minutes with Dr. Skop and never knew anything about the results of the interview until we attended the sentencing hearing before this Court. Dr. Skop never spoke to any of my family members and didn't issue his report until May 27, 2014, 9 days before the sentencing hearing. I never saw the report until that day and my attorney never consulted with me about it. My previous attorney . . . had a very thick file on my case which included many medical records regarding my problems with mental illness. [My trial counsel] never reviewed any of those and he had very little in his file at all each time I saw it.

The trial court further considered Dr. Skop's report which was introduced as an exhibit at the sentencing hearing in which Dr. Skop concluded Ballard was not legally insane at the time of the offense and was competent to stand trial. Dr. Skop did, however, state Ballard's mental state might be considered mitigating, and during the sentencing hearing, trial counsel presented evidence of Ballard's mental state for the trial court to consider. Finally, the trial court considered its own observation of Ballard during the sentencing hearing.

In its order denying Ballard's motion for new trial, the trial court made the following express findings:

> 27. The court . . . was satisfied with [Ballard's] counsel's representation, that [Ballard] was competent and that his plea was made freely, knowingly, and voluntarily.

> 38. The Defendant testified, taking responsibility for the offense. His testimony was clear and lucid and conformed to Dr. Skop's determination of competency and sanity. At no time did this Court perceive any of the hallmarks of mental illness that would have led to further investigation in to [sic] that matter.

The trial court further found, "Based on the sworn statements made to the court, the affidavits submitted, and the court's recollection of both the plea and sentencing hearings, the court finds that [trial counsel] was not deficient in his duties performed during his representation of the defendant and that he performed his duties in a reasonable manner."

Viewing the evidence in the light most favorable to the trial court's ruling, a reasonable view of the record supports the trial court's findings. *Riley*, 378 S.W.3d at 457. Accordingly, the trial court did not abuse its discretion in denying Ballard's motion for new trial on this issue.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH