

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-25-00157-CR
_____

HENRY J. GALLARDO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CR-2019K-189, Honorable Roland D. Saul, Presiding

February 24, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS, J., and QUINN, S.J.[1]

Henry J. Gallardo appeals from his three convictions. They consist of aggravated assault causing serious bodily injury, aggravated assault with a deadly weapon, and failing to stop and render aid. Six issues pend for review. We affirm.

_____

[1] Brian Quinn, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

*Background*

This appeal concerns appellant driving a motor vehicle with an individual, Jorge Bravo, atop the hood of its engine. Both were intoxicated at the time, and depending on whose testimony one was to believe, appellant either struck Bravo with the vehicle or Bravo jumped on the hood as appellant attempted to leave. Nevertheless, no one disputes that appellant drove for some distance with Bravo atop the vehicle before the latter struck a house, thrusting Bravo against the abode if not pinning him between the vehicle and wall. Nor is it disputed that 1) Bravo suffered injury consisting of one or more cuts and bone fractures as a result of the incident and 2) appellant left without rendering aid to Bravo.

The State indicted appellant on three counts. As indicated earlier, two concerned aggravated assault while one entailed appellant's failure to stop and render aid. The jury convicted appellant of each. He questions only those involving aggravated assault.

*Issue One*

Appellant raises the specter of double jeopardy via his first issue. The exact nature of appellant's argument is somewhat unclear, given his reference to captions in an indictment, lesser included offenses, and the number of victims. Nevertheless, we construe it as suggesting his convictions under Counts One and Two were convictions for the same offense involving the same continuous act, which exposed him to double jeopardy. We overrule the issue.

What we have here is one assailant, one victim, and multiple assaults during a fracas beginning in front of one house and ending against another. During same, Bravo suffered serious bodily injury. The incident resulted in the State levying against appellant

two counts of aggravated assault. Count One arose under 22.02(a)(1) of the Penal Code and concerned the accusation that appellant caused Bravo to suffer serious bodily injury. Count Two implicated 22.02(a)(2) of the same code due to its accusation that appellant caused Bravo to suffer bodily injury while exhibiting or using a deadly weapon.

And, the assaults, as described in both counts, had common factual basis. That is, Count One involved appellant "striking Jorge Bravo with a motor vehicle or . . . driving and colliding a motor vehicle into a house while Jorge Bravo was on the hood of the vehicle, or by striking . . . Bravo with a motor vehicle while under the influence of cocaine, alcohol, or a combination of cocaine and alcohol . . . ." Count Two included the first two ways mentioned in Count One but the third differed somewhat. Instead of accusing appellant of striking Bravo while somehow intoxicated, the State said he was "operating a motor vehicle while under the influence of cocaine, alcohol, or a combination of cocaine and alcohol . . . ." But, again, all purportedly occurred during the period marked by appellant first hitting Bravo with the car as he attempted to leave one house and ending down the road when he hit another. With that framework in mind, we find *Landrain v. State*, 268 S.W.3d 532 (Tex. Crim. App. 2008) particularly informative.

Unlike here, a motor vehicle was not involved in *Landrain*. Instead, defendant apparently threw a beer bottle which broke, emitting shards of glass. One shard struck Brizuela causing him to lose an eye*. Id*. at 532–33. Like here, though, the dispute involved both 22.02(a)(1) and (2) of the Penal Code, for the State charged Landrain with aggravated assault of Brizuela by "either (1) intentionally or knowingly causing bodily injury by using a deadly weapon, a bottle, or (2) recklessly causing serious bodily injury by throwing a bottle in his direction." *Id*. at 533. Though the legal controversy entailed

3

unanimous verdicts as opposed to double jeopardy, the court turned to double jeopardy concepts in support of its ultimate holding. *Id.* at 541. And, on the way it noted several things.

First, it rejected the notion that "'bodily injury' aggravated assault [(i.e. 22.02(a))] is really composed of two separate and distinct criminal offenses." *Id.* at 540. Second, it noted causing bodily injury serves as the gravamen of aggravated assault under 22.02(a). *Id.* at 537. Third, it further observed that the aggravating factors found within 22.02(a)(1) and (2) merely were ways "simple assault becomes a more serious offense." *Id.* at 540. In other words, when the assault being aggravated via 22.02(a) involved bodily injury (as opposed to threat, for instance), "the gravamen of the offense of aggravated assault" was bodily injury. *Id.* at 537. Those observations eventually led the court to say:

> Yet another way of testing whether the State charged one aggravated assault or two distinct and separate aggravated assault offenses is to ask whether the State could have obtained two aggravated assault convictions stemming from appellant's criminal conduct. Would double jeopardy allow appellant to be punished for causing serious bodily injury by putting out Mr. Brizuela's left eye and also punished for putting out Mr. Brizuela's left eye with a deadly weapon by throwing a bottle at or in his direction? ***The answer is obvious: appellant committed only one assault during a single incident and may be punished for only one assault***.

*Id.* at 541 (emphasis added). When synthesized, these observations illustrate that when one is prosecuted for aggravated assault under 22.02(a) and bodily injury is the underlying assault (i.e. 22.01(a)(1)), there is only one offense, that being bodily injury. Yet, punishment for that one offense may be elevated by either 22.02(a)(1) or (2). Moreover, utilizing the different aggravating factors expressed in 22.02(a)(1) and (2) to secure two convictions for a single incident violates double jeopardy.

4

Of course, there was only one bottle thrown at one person who suffered only one instance of bodily injury in *Landrain*. What if there were multiple bottles thrown over a course of a minute which resulted in multiple cuts to Brizuela's person? Would securing two convictions for the different cuts under the auspices of using or exhibiting a deadly weapon (22.02(a)(2)) and causing serious bodily injury (22.02(a)(1)) clear the double jeopardy hurdle? That puts to test the "one assault during a single incident" part of the *Landrain* observation and likens to the scenario before us. Answering the question leads us to *Aekins v. State*, 447 S.W.3d 270 (Tex. Crim. App. 2014).

The *Aekins* court told us that "[i]f more than one statutory offense is necessarily committed by [a] single criminal act and impulse, then the offenses merge and the defendant may be punished only once." *Id.* at 275. An example of this rule's application appears in *Dimas v. State*, Nos. 09-14-00018-CR, 09-14-00019-CR, 2015 Tex. App. LEXIS 11025 (Tex. App.—Beaumont Oct. 28, 2015, no pet.) (mem. op., not designated for publication).

A jury convicted Dimas of 1) a third-degree felony and 2) a Class A misdemeanor for assaulting A.W. under 22.01 of the Penal Code. *Id.* at *1. Per the felony conviction, the jury found that Dimas assaulted A.W. on May 8, 2012, by impeding her normal breathing in violation of 22.01(b)(2)(B), according to the court. Per the misdemeanor count, he was found guilty of assaulting A.W. on the same date by kicking, biting, or punching her, or by pulling her hair under 22.01(b). Dimas argued that the two convictions arising from assaults committed close in time during one extended event violated double jeopardy. The reviewing court disagreed.

5

In disagreeing, the *Dimas* panel took care to analyze the picture painted by the facts. It noted that though occurring on the same day, the misdemeanor assault happened inside Dimas's home, while the felony assault was outside. *Id.* at *12–13. Also, the latter resulted from Dimas's interest in preventing the victim from leaving, while his desire for sex motivated the former. *Id.* And, though unfolding over a "relatively short" [period], there was a break between the assault that occurred in A.W.'s bedroom and the assaults that occurred after A.W. left Dimas's home." *Id.* To that, the court added the statement about the applicable unit of prosecution for assaults being each victim. *Id.* at *13; *Paez v. State*, 709 S.W.3d 718, 723 (Tex. App.—Amarillo 2025, pet. ref'd) (stating that the allowable unit of prosecution for an assaultive offense is each victim). But there being only one sole victim did not necessarily spell "the end of a court's double jeopardy inquiry", it continued. *Dimas*, 2015 Tex. App. LEXIS 11025, at *13. Instead, it returned to *Aekins* and said ". . . to the Court of Criminal Appeals, '[t]he key is that one act ends before another act begins.'" *Id.* at *14 (quoting *Aekins*, 447 S.W. 3d at 277–78). And, the inside assault of Dimas had ended before the outside one began, concluded the court. So, double jeopardy posed no bar to the two convictions. *Id.*

No doubt, the facts in *Dimas* and *Aekins* differ from those here. Yet, each are influential when assessing the bar of double jeopardy in situations like ours. They show that double jeopardy does not necessarily permit but a single conviction where one victim experiences multiple assaults over a short period of time. They show that factors such as the location, motivation, connection, and duration of the assaults sway the outcome. And, in considering those factors here, we reach the same outcome achieved in *Dimas.*

6

Like in *Dimas*, the multiple assaults upon Bravo each had a beginning and end. The first came with the initial strike upon Bravo in front of one house. It ended with Bravo falling atop the hood of the vehicle. Another occurred with appellant thrusting Bravo against the wall of a different home several hundred yards later. Appellant having driven down the road before ultimately crashing into the second house also illustrates both a separation of time and location between the assaults, much like those in *Dimas*. Motivations underlying each is less clear, given the paucity of evidence on the matter. Nevertheless, our comparing the circumstances here to those in *Dimas* leads us to conclude the two assaults were discrete acts with the second occurring after the first ended. As such, each was subject to legitimate prosecution and conviction.

### *Issue Two*

Appellant next suggests that because the prosecutor argued in a pretrial hearing that it sought to convict appellant for aggravated assault through "either / or" Counts One and Two, the State is estopped from obtaining a conviction on both counts. We overrule the issue.

Appellant cites us to nowhere in the appellate record illustrating he broached judicial estoppel to the trial court. Nor did our review of the record uncover such a claim being uttered. This is of import because the theory is subject to preservation below. *Chavez v. State*, No. 01-06-00357-CR, 2007 Tex. App. LEXIS 9947, at *7–9 (Tex. App.—Houston [1st Dist.] Dec. 20, 2007, no pet.) (mem. op., not designated for publication) (refusing to entertain the claim of judicial estoppel because it was not made before the trial court); *see also Menefee v. State*, No. 06-20-00101-CR, 2021 Tex. App. LEXIS 5808, at *13–14 (Tex. App.—Texarkana July 22, 2021, pet. ref'd) (mem op., not designated for

7

publication) (refusing to consider the claim of collateral estoppel for the same reason). Appellant, nevertheless, insinuates there is no need to preserve the matter. He does so merely by stating that claims of double jeopardy are not subject to such requirements. Assuming that to be true, he did not attempt to explain how judicial estoppel arising from allegedly inconsistent statements fell within the penumbra of double jeopardy. *See Reed v. State,* No. 07-19-00372-CR, 2021 Tex. App. LEXIS 236, at *2 (Tex. App.—Amarillo Jan. 12, 2021, no pet.) (per curiam) (mem. op., not designated for publication) (noting the duty of an appellant to adequately brief issues). And, it is not our duty to fill the void he left. Rather, we follow *Chavez* and *Menefee* in holding that there was a need to preserve which appellant failed to satisfy.

Yet, even if preservation were inapplicable, we would reject the claim of estoppel. This is so because the circumstances here do not satisfy the elements of judicial estoppel. The latter applies where a litigant takes a position inconsistent with one successfully taken in a prior proceeding. *O'Neal v. State*, No. 07-15-00273-CR, 2016 Tex. App. LEXIS 5763, at *10–12 (Tex. App.—Amarillo May 31, 2016, pet. ref'd) (mem. op., not designated for publication).

Here, the prosecutor did say during a pretrial hearing that he "charged it either/or, basically." At the time, though, the litigants were discussing appellant's request for medical evidence concerning post-assault surgeries Bravo underwent. During this debate the trial court first observed that "he's charged with causing serious bodily injury in Count 1, and causing bodily injury in Count 2; is that correct?" The State followed the query with its either/or comment. Following that came 1) the court's statement about the State's need "to prove [appellant] caused serious bodily injury or bodily injury in these

cases, and I assume they're prepared to do that" and 2) its query about what ". . . this additional surgery is going to prove one way or the other." In short, the exchange had nothing to do with which counts the State intended to pursue but rather the proof needed to establish **both counts**. So, in effect, the State's proving and securing a conviction on both counts was not inconsistent with the either/or utterance when viewed in context; again, at the time, the State and the court were talking about evidence elemental to both counts.

### Issues Three and Four

Via his third and fourth issues, appellant posits that the trial court wrongfully denied his request for an instruction on the lesser included offense of deadly conduct. We overrule the issues.

One engages in deadly conduct when recklessly placing another "in imminent danger of serious bodily injury." TEX. PENAL CODE § 22.05(a). Determining whether it is a lesser included offense of aggravated assault entails the application of a particular test. One element of that test mandates the presence of evidence from which a rational jury could find the defendant "guilty of only the lesser offense." *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023). As explained in *Chavez,* ". . . the guilty-only requirement is met if there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense." *Id.* It is not enough if jurors may simply disbelieve bits of evidence establishing the greater offense; rather, the record must contain evidence actually rebutting or negating an element of the greater offense. *Id.* And, there lies the flaw within appellant's position.

9

He claims entitlement to an instruction on deadly conduct merely because the jury could have believed his version of events. His version consisted of 1) Bravo jumping on appellant's car and 2) appellant driving recklessly down the road with Bravo on the hood of the vehicle.[2] According to appellant, those circumstances, if believed by the jury, would entitle a jury to rationally conclude he (appellant) recklessly placed another in imminent danger of serious bodily injury. Assuming that were true, though, nothing precluded the jury from also convicting him of aggravated assault. Indeed, appellant's version of events did not negate or contradict the evidence of his 1) failing to stop while knowing Bravo lay atop the vehicle and 2) causing Bravo to be thrust against or into a house wall since he did not earlier stop. That evidence was legally sufficient to authorize conviction for aggravated assault, as charged in the indictment. So, again, a jury believing appellant exposed Bravo to imminent danger of serious bodily injury could also reasonably conclude he recklessly committed aggravated assault. It could find him guilty of both. Given that, the trial court did not abuse its discretion in refusing to submit the requested instruction. *See Ham v. State*, No. 07-15-00329-CR, 2016 Tex. App. LEXIS 7732, at *5 (Tex. App.—Amarillo July 20, 2016, pet. ref'd) (mem. op., not designated for publication) (describing the applicable standard of review as abused discretion).

### *Issue Five*

Via this issue, appellant contends that "[t]he judgment should . . . be reformed to delete [reference to a "deadly weapon"] from Count I [since] the jury was not asked to

---

[2] In appellant's view, it mattered not if Bravo actually suffered bodily injury. This is allegedly so because one can still be placed in imminent danger of serious bodily injury even though they ultimately suffered injury.

find" such under Count One. Though the State agreed with appellant, we overrule the issue for the following reason.

To reiterate, through Count One the State accused appellant of committing aggravated assault by causing Bravo to suffer serious bodily injury. As our Court of Criminal Appeals recognized, alleging that one caused serious bodily injury necessarily includes an allegation that the object causing the injury was a deadly weapon. *Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008) (quoting *Gilbert v. State,* 769 S.W.2d 535 (Tex. Crim. App. 1989)). After all, a deadly weapon is one that "in the manner of its use or intended use is capable of causing . . . serious bodily injury." TEX. PENAL CODE § 1.07(1)(B). Thus, an appellant in those situations has sufficient notice that the nature of the weapon alleged in the indictment would be an issue at trial and that the State may seek an affirmative finding on the use of the weapon. *Blount*, 257 S.W.3d at 714 (quoting *Gilbert*, 769 S.W. 3d at 536–37). In other words, the presence, use, or exhibition of a deadly weapon is implicit in an allegation of serious bodily injury. Thus, given *Blount* and *Gilbert*, it is logical to infer that when a jury finds the commission of serious bodily injury it implicitly finds the involvement of a deadly weapon.

Count One at bar spoke of appellant suffering serious bodily injury via the use of a motor vehicle. The jury having convicted appellant of Count One, it necessarily found that appellant used a deadly weapon. Thus, mentioning "deadly weapon" when describing the nature of appellant's conviction under Count One was not improper.

### Issue Six

In his last issue, appellant argues the judgment should be reformed to remove, as premature, the time payment fee assessed against him in the bill of costs. *See Barrera*

11

*v. State*, No. 07-25-00109-CR, 2025 Tex. App. LEXIS 8214. at *4 (Tex. App.—Amarillo Oct. 23, 2025, no pet.) (mem. op., not designated for publication) (holding that the assessment of a time payment fee is premature while the appeal pends and must be deleted) (quoting *Dulin v. State,* 620 S.W.3d 129 (Tex. Crim. App. 2021)). The State concedes this issue, and the judgment will be modified accordingly.

We redact from the bill of costs the assessment of a $15 time payment fee and affirm the judgment.

Brian Quinn
Senior Justice

Do not publish.

12